IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TURQUOISE PROPERTIES GULF, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 09-00272-KD-N |
| | ) | |
| IBERIABANK, a Louisiana Bank, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This action is before the Court on a motion (doc. 25) filed by Defendant,

IberiaBank ("IberiaBank") to dismiss Plaintiff, Turquoise Properties Gulf, Inc.

("Turquoise") on the grounds that Turquoise does not have standing, and thus is an

improper party to enforce the Letters of Credit at issue in this litigation.  This matter has

been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).

Upon consideration of the motion, Turquoise's response in opposition (doc. 30),

IberiaBank's reply (doc. 33), and all other pertinent portions of the record,[1] it is the

recommendation of the undersigned Magistrate Judge that defendant's motion to dismiss

be DENIED.

---

[1]IberiaBank, in its reply brief (doc. 33), incorporates the arguments it set forth in the reply (doc. 15) it filed in support of its first motion to dismiss (doc. 6) attacking the initial Complaint filed in this action.

I.    Background.

Turquoise is a developer of condominiums in Baldwin County, Alabama.  U.S. Bank served as the escrow agent for funds and letters of credit given by preconstruction purchasers for their contractual earnest money deposit.  Turquoise initiated this action against Iberia Bank on April 10, 2009, by the filing of a complaint in the Circuit Court of Baldwin County, Alabama, styled *Turquoise Properties Gulf, Inc. V. IberiaBank*, Civil Action No. 05-CV-2009-900423.00.  Turquoise's Complaint named itself as the sole plaintiff and IberiaBank as the sole defendant.  On May 15, 2009, IberiaBank removed the case to this Court (doc. 1) and filed a motion to dismiss Turquoise's Complaint on the grounds that it failed to state a claim upon which Turquoise was entitled to relief (doc. 6). This motion to dismiss was denied as moot on August 3, 2009 (doc. 24) because Turquoise had filed a First Amended Complaint (doc. 14) on June 12, 2009 which added as party-plaintiff U.S. Bank.[2]  The present motion to dismiss Turquoise (doc. 25) was filed on August 14, 2009, and seeks only the dismissal of Turquoise.

At issue in this lawsuit are two irrevocable standby letters of credit issued by IberiaBank.  The first, Irrevocable Standby Letter of Credit No. 4461, was established on November 22, 2006 in favor of U.S. Bank National Association ("U.S. Bank") as "'Escrow Holder' for the benefit of Turquoise Properties Gulf, Inc." in the amount of

---

[2] IberiaBank filed a motion to strike (doc. 16) Plaintiffs' First Amended Complaint (doc.14) on the grounds that U.S. Bank was first required to file a motion to intervene instead of joining the action as a party-plaintiff in an amended complaint.  This motion was denied on August 3, 2009 (doc. 24)

$381,180.00.[3]  (Doc. 14, First Amended Complaint at Exh. B)  The second, Irrevocable

Standby Letter of Credit No. 4462, was established on November 22, 2006 in favor of

U.S. Bank National Association ("U.S. Bank") as "'Escrow Holder' for the benefit of

Turquoise Properties Gulf, Inc." in the amount of $237,180.00.[4]  (Id. at Exh. C.)

Although the expiration date on each of these letters of credit was stated to be April 4,

2008, they each also contained the following provision:

> It is a condition of this Letter of Credit that is shall be deemed
> automatically extended without amendment for a one-year period
> from the present or any future expiration date hereof, unless at least
> 120 (one hundred twenty) days prior to any such expiration date, we
> shall send you by courier latter notice that we have elected not to
> renew this Letter of Credit for any such additional period.

(Id. at Exhs. B and C.)

Plaintiffs assert that IberiaBank has never sent to U.S. Bank, as escrow holder and

agent for Turquoise, a courier letter notice that IberiaBank has elected not to renew either

Letter of Credit No. 4461 or Letter of Credit 4462.  (Doc. 14, First Amended Complaint

at ¶¶ 7 and 13.)   Plaintiffs further assert that, on March 12, 2009, U.S. Bank made a

proper and timely demand for payment in accordance with the terms and conditions of the

Letters of Credit at issue in this litigation, namely No. 4461 and No. 4462,  to IberiaBank

but that IberiaBank refused to honor U.S. Bank's demand for payment.  (Id.  at ¶¶ 9-10

---

[3]The applicant for this Irrevocable Standby Letter of Credit No. 4461 was Marvin L.
Smith.

[4]The applicants for this Irrevocable Standby Letter of Credit No. 4462 were Brad Smith
and Lisa Renee LeFeaux.

and 15-16)

In the First Count in the First Amended Complaint, Plaintiffs allege that IberiaBank improperly dishonored U.S. Bank's presentment of Letter of Credit No. 4461 which constituted a breach of contract. (Doc. 14t at ¶¶ 17-21) Similarly, in the Second Count, Plaintiffs allege that IberiaBank improperly dishonored U.S. Bank's presentment of Letter of Credit No. 4462 which constituted a breach of contract. (Id. at ¶¶ 22-26) Counts Three and Four allege that, by dishonoring U.S. Bank's presentment of letters of Credit No. 4461 and 4462, respectively, IberiaBank violated the International Standby Practices (Uniform Customs and Practices for Documentary Credits, International Chamber of Commerce Publication No. 500). ( Id. at ¶¶ 27-31 and 32-36). Finally, Counts Five and Six allege that IberiaBank violated Article 5 of the Uniform Commercial Code - Letters of Credit, Ala. Code § 7-5-101 *et seq*. (1975), by dishonoring U.S. Bank's presentment of Letters of Credit 4461 and 4462. (Id. at ¶¶ 38-40 and 43-46)

IberiaBank contends that Turquoise should be dismissed as a party plaintiff because each of the subject Letters of Credit named only one beneficiary, U.S. Bank, and that "only the beneficiary, successor or nominated person may seek relief for the wrongful dishonor of the presentment of a letter of credit." Defendant's Brief (Doc. 25-2) at 5. In other words, IberiaBank contends that U.S. Bank "is the only party who can advance this matter." *Id.* at 6. Turquoise argues in response that it is entitled to seek its own damages for Iberiabank's wrongful dishonor of U.S. Bank's presentment of these Letters of Credit because, under Alabama law, it is the third-party beneficiary of those

4

contracts. Turquoise's Opposition Brief (Doc. 30) at 2-4.   In its reply, Iberiabank argues

simply that Turquoise is not a third party beneficiary to the Letters of Credit. (Doc. 33).

II.   Analysis.

    A.   Standard of Review

    Prior to Bell Atlantic v. Twombly, 550 U.S. 544 (2007), a court could only dismiss

a complaint "if it is clear that no relief could be granted under any set of facts that could

be proved consistent with the allegations," language set forth in Conley v. Gibson, 355

U.S. 41, 45-46 (1957).  This language as it relates to the Rule 12(b)(6) standard was

expressly rejected in Twombly wherein the Supreme Court set forth the following

standard regarding a court's determination of the sufficiency of pleading such as is in

issue in this case:

> Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain
> statement of the claim showing that the pleader is entitled to relief," in order
> to "give the defendant fair notice of what the ... claim is and the grounds
> upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2
> L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion
> to dismiss does not need detailed factual allegations, [citation omitted] a
> plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief"
> requires more than labels and conclusions, and a formulaic recitation of the
> elements of a cause of action will not do [citation omitted]. Factual
> allegations must be enough to raise a right to relief above the speculative
> level.

550 U.S. at 555.  The Supreme Court emphasized, however, that "we do not require

heightened fact pleading of specifics, but only enough facts to state a claim to relief that

is plausible on its face."  550 U.S. at 570.  The Supreme Court recently reinforced the

Twombly standard in Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1949-50 (2009).  The

Court reiterated that a claim is insufficiently pled if it offers only "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 U.S. at 557. *See also*, Phillips v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008)("After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct'."), *quoting* Twombly, 550 U.S. at 553, n. 8. *See also*, Sinaltrainal v. Coca-Cola Co., 2009 WL 2431463 (11th Cir. Aug. 11, 2009)("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss [*citing* Iqbal, 129 S.Ct. at 1949] [and] [t]he well-pled allegations must nudge the claim 'across the line from conceivable to plausible'" [*quoting* Twombly, 550 U.S. at 570]").

It is also important to note that "[a] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." McTernan v. City of York, Pennsylvania, 564 F.3d 636, 646 (3rd Cir. 2009), *quoting*, Phillips, 515 F.3d at 231, in turn *quoting*, Twombly, 550 U.S. at 553, n. 8. The Supreme Court's Twombly formulation of the pleading standard "'does not impose a probability requirement at the pleading stage,'" but instead "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the necessary element." *Id.*, *quoting* Phillips, 515 F.3d at 234, in turn *quoting*, Twombly, 550 U.S. at 556.

      B.    Motion to Dismiss Turquoise as a Party Plaintiff.

Despite IberiaBank's protestations to the contrary, Turquoise has stated a plausible claim for relief predicated on its status under Alabama law as a third party beneficiary to the Letters of Credit at issue in this litigation.  Without conceding that the letters of credit are governed by general contract law or that Alabama law governs this action[5], IberiaBank nonetheless states that "Turquoise may be correct that as a general proposition [under] contract law a third party beneficiary of a contract is entitled to pursue an action for enforcement of that contract, or for damages [as] a result of its breach." (Doc. 33 at 2) IberiaBank also acknowledges that, under Alabama law,  "an intended third party beneficiary is entitled to enforce a contract, or to file suit for the breach of the contract." *Id*., *citing* Rumford v. Valley Pest Control, Inc., 629 So.2d 623, 630 (Ala. 1993); Singer Asset Finance Co., L.L.C. v. Connecticut General Life Ins., 975 So.2d 375, 379 (Ala. Civ. App. 2007).

The Alabama Supreme Court, in Rumford, reiterated the conditions that must be met in order to entitle a party to pursue a cause of action as a third-party beneficiary:

> "It is well established that the parties to a contract may create rights in a third-party beneficiary by manifesting an intention to do so. 'The crucial inquiry involves a determination of intent, and third parties may sue on the contract only if it may be said to have been intended for their direct, as opposed to incidental, benefit.' [Citations omitted]. According to the Restatement (Second) of Contracts:
>
> " 'A beneficiary of a promise is an intended beneficiary if

---

[5]IberiaBank may not actually concede the application of general contract law or Alabama law  to its Letters of Credit at issue in this litigation but has proffered no legal authority indicating otherwise.

recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of a promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.... An incidental beneficiary is a beneficiary who is not an intended beneficiary.'

"Restatement (Second) of Contracts § 302. Thus, the key inquiry is whether the claimant was intended to be benefitted by the contract provision in question. Further, '[i]t is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made.' Restatement (Second) of Contracts § 308. Finally, when determining whether the parties to the contract intended to bestow a benefit on a third party, a court may look beyond the contract to the circumstances surrounding its formation."

Rumford, 629 So.2d at 630-31, *quoting* Beverly v. Macy, 702 F.2d 931 (11th Cir.

1983)(applying Alabama law).[6]

As applied to this case,  IberiaBank simply maintains that, because it listed only

U.S. Bank in the section of each Letter of Credit entitled "BENEFICIARY," the only

---

[6]The Eleventh Circuit also held in Beverly that "the economic motivation of the parties is not dispositive; rather, "the intention of the parties disclosed by the writing and surrounding circumstances known to the parties, *and not their motive*, determines the rights of the third-party beneficiary." 702 F.2d at 941, *quoting*  Mutual Benefit Health & Accident Ass'n of Omaha v. Bullard, 120 So.2d 558, 723 (Ala. 1960)(emphasis added in Beverly).  The Eleventh Circuit then concluded that "the promisee need not be motivated solely by its desire to bestow a benefit upon the third party." *Id*., *citing* Avco Delta Corp. Canada Ltd. v. United States, 484 F.2d 692, 702-03 (7th Cir. 1973) (promise need not be for sole benefit of third party as long as it was for direct or substantial benefit); Harris v. Board of Water & Sewer Comm'rs of Mobile, 320 So.2d 624, 628 (Ala. 1975)(though promisee enjoys some degree of direct benefit from the contract, most direct benefit inures to third-party beneficiaries). The Eleventh Circuit then emphasized that "the question of "intent to benefit" is more complex than an inquiry into whether the primary or sole purpose (or motive) was to benefit a non-party to the contract." *Id.*

8

named beneficiary, and thus the only intended beneficiary under Alabama law, was U.S.

Bank[7]. (Doc. 33 at 3)  According to IberiaBank, the fact that each Letter of Credit also

states that "[w]e [at IberiaBank] hereby establish our Irrevocable Standby Letter of Credit

# 4461 [and # 4462] . . . payable to the order of [U.S. Bank], 'Escrow Holder', **for the**

**benefit of** Turquoise Properties Gulf, Inc" is irrelevant.  IberiaBank discounts the

language by contending that it "is found in the drawing instructions sections of the Letters

of Credit, and does not change the identity of the 'beneficiary' under the terms of the

Letters of Credit." (Doc. 25-2 at n. 5)  IberiaBank does not, however, present any legal

support for its contention that "the drawing instructions" section of a letter of credit

cannot be used as evidence of the intent of the parties and, therefore, as evidence that

Turquoise was an intended third-party beneficiary.  By contrast, it is stated clearly in

Rumford, a case relied upon by IberiaBank itself, that "when determining whether the

parties to the contract intended to bestow a benefit on a third party, a court may look

---

[7]IberiaBank also argues that "Alabama's Supreme Court has identified the party who procures a letter of credit in favor of a beneficiary, here the preconstruction condominium purchasers, as the third party beneficiaries of a letter of credit." (Doc. 33 at n. 2) citing Barclay International, Inc. v. First Alabama Bank of Montgomery, N.A., 557 So.2d 1201, 1206 (Ala. 1989). In Barclay, however, the Court held that Ala. Code § 7-5-111, which deals with warranties by the beneficiary that payment under a letter of credit was properly due, controls when a customer sues a beneficiary for improperly applying the letter of credit funds drawn upon the customer's default. The Alabama Supreme Court rejected the beneficiary's contention that the customers lack standing because "they are interested parties within the meaning of § 7-5-111." 557 So.2d at 1206. The Alabama Supreme Court also rejected the beneficiary's argument that the letter of credit must be considered independent and separate from the underlying transaction and held instead that "[a]lthough the letter of credit itself does not, in specific terms, refer to Barclay, the other agreements and the surrounding circumstances in this case support Barclay's argument that it was an *intended* third-party beneficiary of the letter of credit." *Id.* at 1207.

beyond the contract to the circumstances surrounding its formation." 629 So.2d at 631.

Consequently, it is clear that the language used by IberiaBank, namely its identification of

U.S. Bank as "'Escrow Holder', **for the benefit of** Turquoise Properties Gulf, Inc," is not

without meaning or irrelevant.

IberiaBank also argues that, "[i]f Turquoise's argument was correct, then both U.S.

Bank and Turquoise would have the same claim for the same proceeds against Defendant

because U.S. Bank was the named beneficiary of the letters of credit, and Turquoise

would be the third party beneficiary of [the] letters of credit" and "[t]his is not a proper

result." (Doc. 33 at 4) To the extent IberiaBank is arguing that it will somehow be

subject to double liability, it cites no authority for this contention. IberiaBank also

ignores the likelihood that the damages to which Turquoise may be entitled will differ

from those to which U.S. Bank might be entitled. The Alabama Commercial Code

provides, in pertinent part:

> If an issuer wrongfully dishonors or repudiates its obligation to pay
> money under a letter of credit before presentation, the beneficiary,
> successor, or nominated person presenting on its own behalf may
> recover from the issuer the amount that is the subject of the dishonor
> or repudiation. . . .  the **claimant may also recover incidental but
> not consequential damages**.

Ala. Code § 7-5-111(a) (emphasis added).

III.   Conclusion

For the reasons stated above, the undersigned concludes that IberiaBank's

contention that Turquoise lacks standing to pursue the matters asserted in the First

Amended Complaint is without merit.  It is recommended that IberiaBank's motion to

dismiss Turquoise as a party plaintiff be DENIED.

       **Done** this 8th day of October, 2009.

                    /s/ Katherine P. Nelson         

                    **KATHERINE P. NELSON**

                    **UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL
RIGHTS AND RESPONSIBILITIES FOLLOWING
RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of <u>court.  Failure to do so will bar a de novo</u> determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. <u>See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc)</u>.  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommen<u>ndation should be reviewed de novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

         **Done** this 8<u>th</u>  day of October, 2009.

                                        /s/ Katherine P. Nelson
                                        UNITED STATES MAGISTRATE JUDGE